J-S54037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIC O. ROACH | : | |
| | : | |
| Appellant | : | No. 88 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006318-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIC O. ROACH | : | |
| | : | |
| Appellant | : | No. 89 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004806-2018

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 10, 2020**

Appellant, Dominic O. Roach, appeals from the November 20, 2018 Judgment of Sentence entered in the Lancaster County Court of Common Pleas after a jury convicted him of numerous human trafficking offenses. He challenges an evidentiary ruling and the discretionary aspects of his sentence. After careful review, we affirm.

We glean the following facts from the trial court's Opinion and certified record. In 2017, Appellant and Tonya Henson traveled to a known drug area in Camden, New Jersey, and solicited two women ("the victims") to work for them as prostitutes. Appellant and Henson used the internet website, Backpage, to advertise the victims' services.

Henson's phone number was listed on the Backpage website. Clients would call Henson; she and Appellant would then book rooms at various hotels in the Lancaster area; and each day they would drive the victims to and from Camden and Lancaster. Appellant and Henson set the fees for services rendered by the victims. They also provided the victims with crack cocaine, cocaine, and heroin for their personal use, and to sell to customers. The victims averaged between six to ten appointments each day. Appellant would collect half of the victims' earnings, as well as the amount they owed for personal use drugs, daily.

In addition, Appellant and Henson maintained control of the victims. The victims were required to report to them any time they left the hotel room, and client communication was permitted only through Henson. Appellant inspected the victims' phones to ensure compliance. In one instance, Appellant discovered one of the victims had directly contacted a client. As punishment, he confiscated her phone and ordered Henson to hit the victim; Henson complied. Additionally, if the victims were unable to pay Appellant back for drugs he had provided to them, he refused to drive them back to Camden until they paid him the money they owed.

- 2 -

In September 2017, Detective Christopher Jones of the East Lampeter Township Police Department ("ELTPD") received information about prostitutes being brought from New Jersey to Lancaster. He set up an undercover operation, in which he arranged for Chief John Bowman to meet with two women through a Backpage advertisement on October 3, 2017.

Chief Bowman arrived at a Lancaster hotel room on October 3, 2017. In the room were the victims, drugs, drug paraphernalia, and an owe sheet. After Chief Bowman discussed services with the victims, additional officers entered the room and placed the victims under arrest.

Shortly after their arrest, Detective Jones learned that one of the victims had been released. He then searched Backpage for an advertisement depicting the released victim and set up an appointment with the same number he had contacted on October 3, 2017. Detective Jones arrived at the hotel room on November 21, 2017, and was greeted by the victim. The hotel room contained drugs, drug paraphernalia, and an owe sheet. The victim appeared to be "in very, very rough shape[,]" very thin with sunken eyes, pale skin, and an infected laceration. N.T. Trial, 9/11/18, at 259. Detective Jones identified himself as a police officer and took the victim to the police station.

After Appellant and Henson could not get in touch with the victim by phone on November 21, 2017, Appellant went to the hotel room. Lieutenant Sidney Eachus of ELTPD, who was at the hotel on an unrelated matter, recognized Appellant from photographs related to the prostitution investigation. Lieutenant Eachus approached Appellant, identified himself as

an officer, and asked him to stop. Appellant instead walked to Henson's car, entered the car, and told her to "go, go, go." *Id.* at 282. Henson drove away. However, police apprehended and arrested her and Appellant shortly thereafter.

The officers obtained warrants to search Henson's car and the contents of Appellant's and Henson's cell phones. The Commonwealth charged Appellant at Docket No. 6318-2017 with two counts of Involuntarily Servitude; two counts of Trafficking in Individuals (Recruit/Entice/Solicit); two counts of Trafficking in Individuals (Financial Benefit); two counts of Promoting Prostitution (Controlling Prostitution Business); two counts of Promoting Prostitution (Procuring Prostitution); two counts of Promoting Prostitution (Transporting); two counts Living Off Prostitutes; and one count Criminal Conspiracy.[1]

While sitting in a holding cell after their arrest, Appellant told Henson not to talk to police. However, Henson spoke with the police. After Henson was released from custody, Appellant called Henson from the Lancaster Country Prison and asked her to change her story. On March 10, 2018, Appellant told Henson she could take her statement back. On March 11, 2018, he asked her how she could go against him after everything they had been through. On March 13, 2018, Appellant gave Henson his attorney's contact

---

[1] 18 Pa.C.S. § 3012(a), 3011(a)(1), 3011(a)(2), 5902(b)(1), 5902(b)(3), 5902(b)(5), 5902(b)(6), 5902(d), and 903(c) respectively.

information. He told her to tell the attorney that she did not understand her rights when she gave the police a statement and that the statement was fabricated. As a consequence, the Commonwealth charged Appellant at Docket No. 4806-2018 with one count of Witness Intimidation.[2]

On August 21, 2018, the Commonwealth served upon Appellant the curriculum vitae of, and report by, Corporal Heid, an expert in the area of human trafficking. In response, Appellant filed a Motion *in Limine* to Preclude the testimony of Corporal Heid.

On September 10, 2018, the court addressed the Motion during a pre-trial conference. Appellant argued that Corporal Heid's testimony was inadmissible because 42 Pa.C.S. § 5920 does not apply, he had never been called as a human trafficking expert in Pennsylvania, and the testimony would be prejudicial. In response, the Commonwealth informed the court that the victims would not be testifying. Thus, the Commonwealth stated that it wished to have Corporal Heid testify about the dynamics between victims and their traffickers. Specifically, that they fear their trafficker more than law enforcement and, therefore, generally do not show up to court to testify against their trafficker.

The court granted Appellant's Motion, and instructed the Commonwealth not to reference Corporal Heid at trial. However, the court also informed the

---

[2] 18 Pa.C.S. § 4952(a)(3).

parties that Heid's testimony would be admissible if Appellant's counsel opened the door to the issue of missing victim witnesses.

A three-day jury trial commenced on September 10, 2018. The jury found Appellant guilty of the above crimes. The court ordered a pre-sentence investigation ("PSI") report. On November 20, 2018, the court imposed an aggregate sentence of eighteen to thirty-six years of incarceration. Appellant filed a Post-Sentence Motion, which the trial court denied.

Appellant timely appealed. Both Appellant and the trial court complied with Pa. R.A.P. 1925.

Appellant raises the following issues for our review:

I.  Did the trial court err by ruling that if [Appellant] so much as alluded to the fact that the alleged victim witnesses were absent from trial that this would "open the door" to permit the Commonwealth to admit alleged expert testimony regarding general behavior of witnesses in similar cases when the alleged expert had never met or interviewed the missing witnesses?

II. Did the trial court abuse its discretion when it sentenced Appellant to not less than eighteen (18) years nor more than (36) years [of] incarceration?

Appellant's Br. at 5.

In his first issue, Appellant contends that the trial court violated his constitutional right to confront witnesses by ruling that if Appellant presented evidence that the victims failed to appear at trial, then the trial court would permit the Commonwealth to call as an expert witness, Corporal Heid, an expert on the behavior of human trafficking victims. In particular, Appellant avers that "the threatened admission of the alleged expert testimony was used

as a tool to sideline [him] from having the opportunity to cross[-]examine his accusers or question why his accusers [were] not present at trial as guaranteed by the United States and Pennsylvania Constitution Confrontation Clauses." Appellant's Br. at 13.

Appellant's constitutional challenge raises a question of law. Thus, our standard of review over the trial court's admission of the contested testimony is *de novo*, and our scope of review is plenary. ***Commonwealth v. Yohe****,* 39 A.3d 381, 384 (Pa. Super. 2012).

The Sixth Amendment to the United States Constitution, made applicable to the States *via* the Fourteenth Amendment, mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.[3] The right is a procedural one intended to ensure the reliability of evidence through cross-examination. ***Commonwealth v. Yohe***, 79 A.3d 520, 530-31 (Pa. 2013); ***Commonwealth v. Bozyk***, 987 A.2d 753, 756 (Pa. Super. 2009).

_____

[3] The Pennsylvania Constitution includes a right of confrontation. ***See*** Pa. Const., Article I, § 9 ("in all criminal prosecutions the accused hath a right to be heard by himself and his counsel [and] to be confronted with the witnesses against him"). But, because Appellant does not argue that Article I, section 9 provides him with greater protection than the Sixth Amendment, we will treat the state and federal provisions as coextensive for purposes of our review. ***See Commonwealth v. Kratsas****,* 764 A.2d 20, 27 n.5 (Pa. 2001).

The Confrontation Clause applies only to the right to cross-examine witnesses who actually testify. In this case, Appellant had the right and in fact, actually did cross-examine the witnesses against him.[4] Thus, the trial court's ruling that it would permit the Commonwealth to call a witness under certain circumstances, and the witness was never called, does not impact Appellant's rights under the Confrontation Clause. Accordingly, Appellant is not entitled to relief on this claim.

In his second issue, Appellant challenges the discretionary aspects of his sentence. Appellant's Br. at 15. He asserts his sentence is inappropriate based on his rehabilitative needs. He also contends that the impact of the crime on the victims does not warrant such a harsh sentence and that the court punished him exercising his right to trial. *Id.* at 10-11, 15-16.

Challenges to the discretionary aspects of sentencing are not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we must determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether

---

[4] Additionally, the Commonwealth did not seek to admit testimonial statements from witnesses that did not appear at trial. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that the Confrontation Clause prohibits the admission of "testimonial" statements of a witness who did not appear at trial unless the witness was unavailable and the defendant had a prior opportunity to cross-examine the witness).

appellant's brief sufficiently addresses the challenge in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006).

Appellant has met the first three elements by filing a timely Notice of Appeal, preserving the issue in a Post-Sentence Motion, and including a Statement of Reasons Relied Upon for Allowance of Appeal pursuant to Pa.R.A.P. 2119(f). Before reaching the merits of Appellant's argument, we must determine if he has presented a substantial question for our review.

Whether a substantial question has been raised regarding a discretionary sentence is determined on a case-by-case basis. **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (citation and quotation omitted).

> This Court has held that
>
> the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.,* the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm (*e.g.,* the sentence is unreasonable or

the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range).

***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000).

In the instant case, Appellant's Rule 2119(f) Statement suggests that the court violated Section 9721 of the Sentencing Code. Appellant's Br. at 10. He asserts that the court did not appropriately consider his history of substance abuse, his troubled family life and youth, and the minimal impact on the life of the victims, noting that the victims were free to leave at any time and did not participate in his trial. ***Id.*** Appellant does not reference the sentencing guidelines at all.

This Court has consistently held that an allegation that a sentencing court "did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa. Super. 1995); ***see also Commonwealth v. Rhoades***, 8 A.3d 912, 918-19 (Pa. Super. 2010) (stating "an allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review"). Appellant has failed to raise

a substantial question. Accordingly, we decline to review Appellant's sentencing challenge. [5], [6]

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/10/2020

---

[5] Moreover, where the sentencing court had the benefit of a PSI, we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988).

[6] Appellant's claim that the court punished him for exercising his constitutional right to a trial is underdeveloped. Appellant's Br. at 10-11. Appellant fails to cite to the record or make any legal argument. Consequently, this issue is waived. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record).